# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 14, 2016

Lyle W. Cayce
Clerk

No. 15-10382

HAMILTON PROPERTIES; HAMILTON 1101 LP; HAMILTON PROPERTIES CORPORATION; GO-KAL LLC; and ULYSSES L.L.L.P,

Plaintiffs – Appellants,

v.

AMERICAN INSURANCE COMPANY; FIREMAN'S FUND INSURANCE COMPANY; ARTHUR J. GALLAGHER; ALLIANZ GLOBAL RISKS,

Defendants – Appellees.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:12-CV-5046

Before DENNIS, ELROD, and GRAVES, Circuit Judges.

PER CURIAM:*

This case arises out of an insurer's denial of a property damage claim. The insured, Hamilton Properties (Hamilton) appeals the district court's order granting summary judgment on all claims for the insurance company, The American Insurance Co. (AIC). We AFFIRM the judgment of the district court.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-10382

**I.**

In July 2009, a hailstorm in Dallas, Texas, allegedly caused damage to the Dallas Plaza Hotel, owned by Hamilton. At the time of the hailstorm, the property was covered under Hamilton's insurance policy with AIC. The policy insured the property against "all risks of direct physical loss or damage, except as excluded or limited elsewhere." The policy excluded from coverage "[w]ear and tear, gradual deterioration, inherent vice, latent defect, depletion, erosion, corrosion, mold, wet or dry rot," "[s]ettling, cracking, shrinking, bulging, or expansion of pavements, foundations, walls, floors, roofs, or ceilings," and "[f]aulty inadequate or defective . . . [d]esign specifications, workmanship, repair, construction," or faulty "[m]aterials used in repair, construction, renovation, or remodeling; or maintenance." Importantly, the policy required the insured to provide "prompt notice" of any claims. The policy also required that the insured "[t]ake all reasonable steps to protect the covered property from further damage by a Covered Cause of Loss." The policy's coverage ended on September 24, 2009.

When the hailstorm occurred, the property was no longer being used as a hotel, but there were multiple individuals living in the building. One of those individuals, Tom Coughlin, acted as a caretaker of the property. Coughlin stated at his 2013 deposition that he had been in the property during the hailstorm and had witnessed ping-pong-ball-sized hailstones hitting the property. Following the hailstorm, Coughlin saw water dripping from the ceiling of the twelfth floor, and after several months, ceiling tiles began falling from the twelfth floor ceiling. Coughlin stated that he notified Hamilton of the damage within a couple of weeks but no more than a couple of months and on several occasions. At the time of his deposition in 2013, Coughlin stated that the water leak from the roof of the twelfth floor had continued to the present.

No. 15-10382

Hamilton took no action with regard to the property damage until November 2010, when Hamilton's representative, Larry Hamilton, hired an inspector to inspect the damage to the roof and the twelfth floor. In February 2011, Mr. Hamilton emailed an AIC insurance agent about the damage. The agent responded that it was no longer Hamilton's broker of record and thus could not accept or report the claim on Hamilton's behalf. In October 2011, Hamilton properly filed its claim with AIC.

After investigating the claim, AIC denied coverage. In its denial letter, AIC explained that because so much time had passed and because there were multiple hailstorms both before and after the July 2009 hailstorm, AIC could not determine what caused the damage or when the claimed damage occurred, including whether the damage had occurred during the coverage period of February 16 to September 24, 2009. AIC also noted that an inspection report by one of its engineers on July 27, 2009—nineteen days after the hailstorm— had not indicated any damage from water or hail. AIC's roof expert inspected the property during the investigation in 2012 and found that "the roof was done with only one layer of base sheet covered with gravel, which [was] not acceptable" for that type of roof and that "the worst interior damage was over an area that was previously patched," which suggested that the damage could have also resulted from a faulty, worn, or unmaintained roof.

In response to the denial letter, Hamilton brought suit against AIC, alleging breach of contract and several non-contractual claims.[1] The district court granted AIC's motion for summary judgment on all claims. Hamilton now appeals.

---

[1] All Plaintiffs except Hamilton dismissed with prejudice all claims against all Defendants. Hamilton dismissed with prejudice all claims it asserted against all Defendants except for AIC. Thus, only Hamilton and AIC remain in this case.

## II.

We review a district court's grant of summary judgment *de novo*, applying the same legal standard as the district court. *Kariuki v. Tarango*, 709 F.3d 495, 501 (5th Cir. 2013). "Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Miller v. Metrocare Servs.*, 809 F.3d 827, 831–32 (5th Cir. 2016) (citing Fed. R. Civ. P. 56(a)). All evidence is viewed in the light most favorable to the non-moving party. *Id.* at 832. "A dispute about a material fact is 'genuine' if the evidence would permit a reasonable jury to return a verdict for the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

We first turn to Hamilton's breach of contract claim. Under Texas law, the elements of a breach of contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 579 (5th Cir. 2015) (citing *Foley v. Daniel*, 346 S.W.3d 687, 690 (Tex. App.—El Paso 2009, no pet.)), *cert. denied*, 136 S. Ct. 592 (2015). "[F]or an insurance company to be liable for a breach of its duty to satisfy a claim presented by its insured, the insured must prove that its claim falls within the insuring agreement of the policy." *Data Specialties, Inc. v. Transcontinental Ins. Co.*, 125 F.3d 909, 911 (5th Cir. 1997).

The district court granted summary judgment for AIC on Hamilton's breach of contract claim on two independent grounds. First, the district court determined that because Hamilton had failed to provide "prompt notice," as required by the policy, AIC's duty to pay Hamilton's claim had been discharged as a matter of law. Second, the district court concluded that Hamilton failed to establish a prima facie claim for breach of contract because Hamilton could

not show that its claimed damages were covered by the policy. We address each ground in turn.

The policy required that Hamilton provide to AIC "prompt" notice of any claim. Under Texas law, compliance with a provision in an insurance policy requiring prompt notice "is a condition precedent, the breach of which voids policy coverage." *Blanton v. Vesta Lloyds Ins. Co.*, 185 S.W.3d 607, 611 (Tex. App.—Dallas 2006, no pet.). However, the insured's breach of a prompt notice provision does not absolve the insurer from liability "unless the lack of notice prejudices the insurer." *Id.* The parties dispute whether "notice" occurred in February 2011 (when Hamilton emailed an incorrect AIC agent and was promptly notified that the agent could not file Hamilton's claim) or November 2011 (when Hamilton actually filed its claim with AIC). We assume for purposes of our review of the grant of summary judgment that AIC was notified in February 2011. *See Miller*, 809 F.3d at 832. The district court determined that even if Hamilton notified AIC in February 2011, the notice was not prompt as a matter of law.

Where, as here, the policy does not define "prompt" notice, Texas courts construe the phrase to mean "that notice must be given *within a reasonable time* after the occurrence" of the damage. *Ridglea Estate Condominium Ass'n v. Lexington Ins. Co.*, 415 F.3d 474, 479 (5th Cir. 2005) (citing *Stonewall Ins. Co. v. Modern Exploration, Inc.*, 757 S.W.2d 432, 435 (Tex. App.—Dallas 1988)). Here, Hamilton claims that the property was physically damaged by the hailstorm on July 8, 2009, and the earliest it may have given AIC notice was February 2011—nineteen months after the damage occurred. Hamilton does not provide any excuse for waiting nineteen months to give AIC notice of the damage.[2] The damage was not hidden, and Coughlin, Hamilton's own

---

[2] When asked why Hamilton did not investigate the cause of water leaking on the twelfth floor after Coughlin reported the leaking, Mr. Hamilton replied:

witness, testified in his deposition that he notified Hamilton several times about the damage within a couple of months after the hailstorm. Because the delay here occurred "without explanation," we agree with the district court that Hamilton's notice to AIC was not prompt as a matter of law. *See, e.g.*, *Alaniz v. Sirius Int'l Ins. Corp.*, 626 F. App'x 73, 77 (5th Cir. 2015) ("[I]f the delay occurs without explanation, it is appropriate to conclude that prompt notice was not given as a matter of law."); *id.* at 77 n.2 (citing Texas cases where delays of 46 days, three months, and six months, were unreasonable as a matter of Texas law).

To be absolved from any duty under the policy, AIC must further show that it was prejudiced by Hamilton's unreasonably late notice. *See Ridglea*, 415 F.3d at 480; *PAJ, Inc. v. Hanover Ins. Co.*, 243 S.W.3d 630, 634 (Tex. 2008). Prejudice can arise when the failure to timely notify results in the insurer's "inability to investigate the circumstances of an occurrence to prepare adequately to adjust or defend any claims." *Blanton*, 185 S.W.3d at 615; *see Stonewall*, 757 S.W.2d at 435 ("The purpose of the notice requirement is to enable the insurer to promptly investigate the circumstances of the accident while the matter is fresh in the minds of the witnesses, to prevent fraud, and to enable it to form an intelligent estimate of its rights and liabilities under the policy so that it may adequately prepare to defend any claim that may arise.").

Hamilton argues that AIC cannot show prejudice because two AIC employees made statements indicating that AIC was able to investigate

---

We had closed the hotel. There wasn't immediate harm to the operating hotel. The leak that was happening was happening on the 12th floor. When we found out that it was a big casualty loss because of the hailstorm, we started—we took efforts to get a new roof that the insurance company still hasn't paid for.

There is also undisputed evidence that Mr. Hamilton hired an inspector in November 2010 to inspect the damage to the roof. When asked why the claim was not reported to AIC in November 2010, Mr. Hamilton stated that he did not know.

Hamilton's claim insofar as AIC determined that coverage should be disclaimed due to its inability to determine the cause or time period of the damage. We agree with the district court that the testimony of the AIC employees does not raise a genuine issue of material fact in light of AIC's evidence that Hamilton's unreasonably late notice prejudiced AIC. It is undisputed that because of Hamilton's delay, AIC lost access to critical evidence, including the condition of the twelfth floor before and after the July hailstorm and up until the end of the coverage period. As the district court observed, "there is no indication that Plaintiffs attempted to mitigate the damage or document the changes in the interim," which surely "limited AIC's ability to determine whether and to what extent the July hailstorm damaged the property." Because the AIC employees' testimony does not raise a fact issue on the question of prejudice, we agree with the district court that AIC was prejudiced as a matter of law and thus that AIC's obligations under the policy were discharged by Hamilton's unreasonably late notice.

Even assuming *arguendo* that AIC was not prejudiced by Hamilton's late notice, we agree with the district court that Hamilton also failed to establish a prima facie claim for breach of contract. Under Texas law, to recover under an insurance policy, the insured must show that its claimed damages are covered by the policy. *See Data Specialties*, 125 F.3d at 911. The policy here covers damage by a hailstorm "provided such loss or damage occurs during the term of this policy." As, the term of the policy was from February 16 to September 24, 2009, Hamilton can only recover for damages that: (1) were caused by a hailstorm and (2) occurred on or between February 16 and September 24, 2009.[3]

---

[3] "Texas recognizes the doctrine of concurrent causes, so that when 'covered and non-covered perils combine to create a loss, the insured is entitled to recover only that portion of the damage caused solely by the covered peril(s).'" *Nat'l Union Fire Ins. of Pittsburgh, Pa. v. Puget Plastics Corp.*, 735 F. Supp. 2d 650, 669 (S.D. Tex. 2010) (quoting *Wallis v. United*

No. 15-10382

Hamilton points to no evidence describing or quantifying the extent of the hailstorm damage on or before September 24, 2009. Coughlin, Hamilton's main witness, testified that the roof problem on the twelfth floor has continued since the time he first noticed the leak until "today." Coughlin did not specify the damage to the property prior to or as of September 24, 2009. Hamilton's expert witness, Thomas Shingler, inspected the property on August 19, 2013— over four years after the July hailstorm. While Shingler concluded that the July hailstorm "impact-damaged" part of the "building roof perimeter" such that it "ruptured the waterproofing skin of the cant element producing flow paths for the intrusion of water to the interior," Shingler was unable to determine the extent of the damage to the property between July 8 and September 24, 2009. At most, Shingler claimed he could show that the *current* damage to the property (or the damage he observed in August 2013) can be *linked* to the July hailstorm. This does nothing to enable a jury to segregate damages for only that property damage caused by covered perils that occurred within the policy period.[4] Hamilton's failure to provide evidence upon which a jury or court could segregate covered damages from uncovered damages is fatal to its claim. *Wallis v. United Servs. Auto Ass'n*, 2 S.W.3d 300, 304 (Tex. App.— San Antonio 1999, pet. denied).

Finally, we agree with the district court that Hamilton cannot prevail on its extra-contractual claims for violation of the Texas Deceptive Trade

---

*Servs. Auto Ass'n*, 2 S.W.3d 300, 302–03 (Tex. App.—San Antonio 1999, review denied)). As such, "[f]ailure to provide evidence upon which a jury or court can allocate damages between those that resulted from covered perils and those that did not is fatal to an insured party's claim." *Id.* (citing *Wallis*, 2 S.W.3d at 304). The Texas Court of Appeals held in *Wallis* that "[b]ecause an insured can recover only for covered events, the burden of segregating the damage attributable solely to the covered event is a coverage issue for which the insured carries the burden of proof." 2 S.W.3d at 303.

[4] Hamilton's expert admitted that the claimed damage he saw in August 2013 would not have been there at the end of the policy period in 2009 because such damage "takes time to develop."

No. 15-10382

Practices Act, Sections 541 and 542 of the Texas Insurance Code, and the duty of good faith and fair dealing. A claim under Section 542 requires a showing that the insurer "is liable for the claim," which, as discussed above, Hamilton cannot show. *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 518 (5th Cir. 2015) (citing *GuideOne Lloyds Ins. Co. v. First Baptist Church of Bedford*, 268 S.W.3d 822, 830–31 (Tex. App.—Forth Worth 2008, no pet.)). Hamilton's other three claims can be collectively analyzed under the same standard as a common-law bad faith claim. *Texas Mut. Ins. Co. v. Sara Care Child Care Ctr., Inc.*, 324 S.W.3d 305, 317 (Tex. App.—El Paso 2010, review denied) (explaining that that standard for liability under § 541 of the Texas Insurance Code and the Texas Deceptive Trade Practices Act "incorporate[s] the common-law bad faith standard").

In general, "an insured does not have a bad faith claim in the absence of a breach of contract by the insurer." *Toonen v. United Servs. Auto. Ass'n*, 935 S.W.2d 937, 941 (Tex. App.—San Antonio 1996, no writ); *see also Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995)). The only exceptions to this general rule are when the insurer "commit[s] an act, so extreme, that would cause injury independent of the policy claim" or "failed to timely investigate its insureds' claims." *Toonen*, 935 S.W.2d at 941–42. Because Hamilton's breach of contract claim fails, and because Hamilton neither proffered any evidence of an injury "independent of the policy claim" nor argued that AIC failed to timely investigate its claim, Hamilton cannot prevail on its remaining extra-contractual claims.[5] *See id.*

AFFIRMED.

---

[5] As Hamilton did not brief his other extra-contractual claims, any arguments that the district court erred in granting AIC summary judgment on those claims are forfeited. *See United States v. Valdiosera-Godinez*, 932 F.2d 1093, 1099 (5th Cir. 1991) ("[A]ny issues not raised or argued in the appellant's brief are considered waived and will not be entertained on appeal.").